## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 27 2017, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of R.M. (Minor Child); <br><br> J.G., <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, <br><br> *Appellee-Petitioner.* | November 27, 2017 <br><br> Court of Appeals Case No. 79A02-1707-JT-1545 <br><br> Appeal from the Tippecanoe Superior Court <br><br> The Honorable Faith A. Graham, Judge <br><br> Trial Court Cause No. 79D03-1612-JT-115 |

**Najam, Judge.**

## Statement of the Case

[1] J.G. ("Mother") appeals the trial court's termination of her parental rights over her minor child R.M. ("Child"). Mother presents a single issue for our review, namely, whether the State presented sufficient evidence to support the termination of her parental rights. We affirm.

## Facts and Procedural History

[2] In June 2012, Mother began dating M.M. ("Father"), and their son, Child, was born in February 2013. On September 1, 2015, someone contacted the Indiana Department of Child Services ("DCS") to report that Father and Mother were intoxicated and did not know Child's whereabouts. Later that evening, someone contacted DCS to report that Father and Mother had ingested synthetic marijuana, or "spice," and had both been hospitalized. Thereafter, law enforcement filed criminal charges against Father and Mother "related to spice use." Appellant's App. Vol. 2 at 26. On September 3, DCS filed a petition alleging that Child was a child in need of services ("CHINS"). After Mother and Father failed to fully comply with services, on December 16, 2016, DCS filed a petition to terminate their parental rights over Child.

[3] Following a hearing, the trial court granted the petition on June 27, 2017. In support of its order, the trial court entered the following findings and conclusions:

FINDINGS OF FACT

1. [J.G.] (DOB 6/4/1993) is the Mother and [M.M.] (DOB 2/20/1994) is the Father of [Child] (DOB 2/26/2013).

2. Tippecanoe County Department of Child Services ("DCS") received a report on September 1, 2015[,] that the parents were intoxicated and did not know the location of their two (2) year old child.  DCS received a second report on the same night that the parents were under the influence of spice and taken to the hospital.

3. Investigation revealed that on September 1, 2015, parents were under the influence and police were called.  Mother admitted to officers that a substance located in their vehicle was spice.  Both parents were transported to the hospital for treatment.  After the parents were discharged from the hospital, parents tried to get the child from Paternal Great Aunt who had been caring for the child.  Paternal Great Aunt tried to return the child to the parents but found parents under the influence and unable to care for the child.  Law enforcement and emergency medical services were dispatched to the home due to the condition of parents.  Father was found passed out from spice use and Mother was located smoking spice.  Both parents were again transported to the hospital for treatment and both parents admitted spice use.  After release from the second hospitalization, both parents were later arrested in Clinton County on charges related to spice use.

4. During the investigation, DCS learned the family had a history of moving from relative to relative.  The family had been living with Maternal Grandmother before moving in with Paternal Great Grandmother about one (1) week prior.  Paternal Great Grandmother was about to evict the parents for drug use.

5. The child was removed from parents' care and placed with relatives on September 1, 2015.  DCS filed a Child in Need of Services ("CHINS") petition in Cause Nos. [sic] 79D03-1509-JC-184.  A CASA was appointed to represent the best interests of the child.  Detention and Initial Hearings were held on September 3,

2015[,] at which time both parents were incarcerated. Continued Detention and Initial Hearings were held on September 4, 2015.

6. At the Fact[-]Finding Hearing, Mother and Father admitted struggling with spice use, housing instability, and unemployment. Both parents agreed they were unable to care for the child at that time.

7. Pursuant to the dispositional orders issued on October 9, 2015, Mother was offered the following services: home[-]based case management, substance abuse assessment and services, individual therapy, drug screens, and parenting time. Father was offered the following services: home[-]based case management, substance abuse assessment and services, individual therapy, drug screens, and parenting time. Evaluations revealed no barriers to each parent's ability to participate in services and achieve reunification.

8. Case conferences, family team meetings, and review hearings were held periodically. DCS prepared written reports and recommendations prior to each hearing.

9. A permanency hearing commenced on October 18, 2016[,] and concluded on January 10, 2017[,] at which time the permanent plan was determined to be initiation of proceedings for termination of parental rights and adoption. DCS filed a Verified Petition to Terminate Parental Rights[.] The evidentiary hearing on said petition was held on March 14, 2017.

10. The child has remained out of the home for over six (6) months from the dispositional order. In fact, the child has been out of the home for more than fifteen (15) of the most recent twenty-two (22) months.

11. Parents have a history of instability in housing and employment. Parents participated only sporadically in case management services to address these issues. During the CHINS

case, parents were discharged from at least two (2) case management service providers.

12. At the onset of the CHINS case, parents were homeless and moving from relative to relative. In March of 2016, parents obtained an apartment but did not have stable and sufficient income to support such housing for more than a few months. Parents separated for about two (2) months during which time Mother lived with Maternal Grandmother and Father lived with paternal relatives. Both parents currently reside with Paternal Grandparents and Paternal Great Grandmother in a home not suitable for the child[]. Paternal Grandmother has a history of abusing prescription medication and was incarcerated in 2015 (during the CHINS case) for charges related to her addiction. Paternal Grandfather also has a history of abusing pills and alcohol.

13. Mother obtained several jobs during the CHINS case but has been unable to maintain any job for more than a few months at a time. Mother was scheduled to start a new job on the day of the termination hearing. Father also had multiple short-term jobs with his longest period of employment being approximately six (6) months. Father was unemployed at the time of the termination hearing.

14. Parents have a history of substance use and related criminal activity. Prior to the CHINS case, Father had convictions for Possession of Marijuana (2013) and Illegal Consumption of Alcohol (2014) after having been committed to the Department of Correction as a juvenile. Both parents were arrested and convicted of Possession of Synthetic Marijuana at the beginning of the CHINS case. Mother served thirty (30) days on Home Detention and Father served thirty (30) days in the Clinton County Jail.

15. During the CHINS case, Mother was arrested again in September of 2016 and spent approximately a week in jail.

Father was arrested again several times during the CHINS case. On November 10, 2015, Father was arrested for Operating While Intoxicated and Possession of Marijuana and later convicted. On January 4, 2016, Father was arrested for Leaving the Scene of an Accident and later convicted. Father admitted he had been drinking during this incident and that his vehicle caught fire after the crash. Days before the termination hearing, Father was arrested again for Possession of Synthetic Drug and Driving While Suspended at which time Father was on probation.

16. Both parents completed a substance abuse assessment. Mother passed all drug screens collected and Father passed all but two (2) drug screens collected. However, during periods of the case, both parents failed to consistently call the drug screen number to determine collection dates and failed to take all drug screens requested.

17. Mother completed recommended Intensive Outpatient Program (IOP) treatment in February of 2016. Mother attended individual therapy through August of 2016 then failed to attend three (3) scheduled sessions in September of 2016 resulting in discharge from treatment. Mother relapsed on synthetic marijuana in July of 2016 and again in September of 2016. Mother started inpatient treatment at Tara Treatment Center on October 26, 2016[,] but only completed approximately ten (10) days of the twenty-one (21) day program before leaving against staff advice on November 5, 2016. After failing to complete inpatient treatment, Mother attended another intake appointment on December 7, 2016[,] but failed to follow through with a recommendation to repeat IOP treatment.

18. Father completed a substance abuse assessment and it was recommended that he complete IOP for synthetic marijuana abuse. Prior to the CHINS case, Father had been using synthetic marijuana four (4) or five (5) times daily for two (2) years with occasional periods of sobriety for up to two (2) months. Father had also been drinking about two (2) days per week. Father

completed recommended IOP treatment and six (6) weeks of aftercare. Father participated in approximately twelve (12) individual therapy sessions and then stopped attending in June of 2016. Father tested positive for alcohol in May of 2016 and again in July of 2016. Father never returned to recommended individual counseling and was discharged from services.

19. Both parents participated in individual therapy fairly consistently and both indicate that therapy was beneficial. However, despite therapy and other services, the parents have failed to demonstrate an ability to support themselves and the child with stable income and housing. The parents have continued historical patterns of substance use and criminal activity.

20. Parents each completed a Parenting/Family Functioning Assessment[.] The therapist was concerned regarding a lack of comfort for the child when he was injured, lack of physical affection, and lack of knowledge about the child's medical needs. The therapist recommended therapy, home[-]based case management, a bonding assessment, parenting classes, and drug screens for both parents. The therapist also recommended the parents attend the child's medical appointments. Although parents attended most of the medical appointments as ordered and were appropriate with the child, they were argumentative with the relative placement. Neither parent ever completed the Bonding Assessment as recommended.

21. At the beginning of the CHINS case, parents attended scheduled visits that went well. By approximately April of 2016, parenting time progressed to semi-supervised and then overnight visits in the home. Parents were nearing a trial home visit when DCS learned of a domestic violence incident and another incident of Father punching a hole in the wall of the child's room while intoxicated. Father admitted another four (4) or five (5) incidents of drinking to intoxication. Visits regressed to fully

supervised in May of 2016 with the parents attending separately for a period of time.

22. Since May of 2016, visits have remained fully supervised. Although parents were prepared and appropriate during visits attended, their attendance was inconsistent resulting in discharge from at least three (3) service providers. Mother failed to attend any visits for approximately a month in June or July of 2016 at which time the child's therapist recommended implementation of therapeutic visits due to the child's stress response regarding inconsistent visits. Further, visit facilitators observed a lack of bonding between the parents and the child. Visits continued at a therapeutically supervised level.

23. The parents have dated since June of 2012. Mother was married to another individual at that time[,] but later divorced. The parents married on December 22, 2016.

24. Father's pattern of substance abuse and related criminal activity did not improve after the birth of the child but, rather, deteriorated. At the evidentiary hearing, Father acknowledged he continues to struggle with the use of synthetic marijuana and alcohol relapsing as recently as March of 2017. Both parents acknowledged Father cannot care for the child at this time. Although Mother vocalized she would separate from Father if required to reunify with her child, Mother's actions have demonstrated her intent to remain with Father despite his continued substance abuse and criminal activity.

25. The child has been placed in a concurrent relative home since his initial removal in September of 2015. The child is bonded to the relatives and is doing well in their care. The child has participated in therapy throughout the CHINS case to address trauma symptoms. The child is readily adoptable.

CONCLUSIONS OF LAW

1. There is no reasonable probability the conditions that resulted in removal of the child or the reasons for continued placement outside the home will be remedied. The parents have yet to demonstrate the ability or willingness to make lasting changes from past behaviors. Both parents failed to complete substance abuse treatment and relapsed several times during the case. Father relapsed and was arrested approximately two (2) weeks prior to the termination hearing. Despite Father's continued substance abuse issues, Mother remains dedicated to the relationship with Father instead of reunification with the child. There is no reasonable probability that either parent will refrain from criminal behavior to provide adequately for the child's well-being.

2. Continuation of the parent-child relationships pose[s] a threat to the well-being of the child. The child needs stability in life. The child needs parents with whom the child can form a permanent and lasting bond and who will provide for the child's emotional, psychological, and physical well-being. The child's well-being would be threatened by keeping the child in parent-child relationships with either parent whose own choices and actions have made them unable to meet the basic needs of the child in a stable and permanent home.

3. DCS has a satisfactory plan of adoption for the care and treatment of the child following termination of parental rights. The child can be adopted and there is reason to believe an appropriate permanent home has or can be found for the child with relatives.

4. For the foregoing reasons, it is in the best interests of [Child] that the parental rights of [Mother] and [Father] be terminated.

*Id.* at 26-29.  This appeal ensued.[1]

## Discussion and Decision

We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Fam. & Child. (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*.  However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination.  *Schultz v. Porter Cty. Off. of Fam. & Child. (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001).  Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened.  *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities.  *Id.* at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

> (B) that one (1) of the following is true:
>
>> (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the

---

[1] Father does not participate in this appeal.

reasons for placement outside the home of the
parents will not be remedied.

(ii) There is a reasonable probability that the
continuation of the parent-child relationship poses a
threat to the well-being of the child.

*  *  *

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of
the child.

Ind. Code § 31-35-2-4(b)(2). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[6] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Off. of Fam. & Child. (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Off. of Fam. & Child. (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[7] Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Off. of Fam. & Child.*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[8] On appeal, Mother contends that the trial court erred when it concluded that: the conditions that resulted in Child's removal and the reasons for his placement outside of Mother's home will not be remedied; there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of Child; and termination is in Child's best interest. Because the statute is written in the disjunctive, we need not address the court's conclusion that continuation of the parent-child relationship poses a threat to Child's well-being. I.C. § 31-35-2-4(b)(2).

### Conditions that Resulted in Child's Removal will not be Remedied

[9] In determining whether the evidence supports the trial court's finding that Mother is unlikely to remedy the reasons for Child's removal, we engage in a two-step analysis. *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014). "First, we identify the conditions that led to removal; and

second, we determine whether there is a reasonable probability that those conditions will not be remedied." *Id.* (quotations and citations omitted). In the second step, the trial court must judge a parent's fitness to care for his children at the time of the termination hearing, taking into consideration evidence of changed conditions. *Id.* However, the court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Moore v. Jasper Cty. Dep't of Child Servs.*, 894 N.E.2d 218, 226 (Ind. Ct. App. 2008) (quotations and citations omitted). Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* Moreover, DCS is not required to rule out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. *Id.*

[10] Mother does not challenge the trial court's findings on this issue, and we cannot say that the trial court clearly erred when it concluded from those findings that the conditions that resulted in Child's removal will not be remedied. Child was removed from Mother's care due to Mother's substance abuse. During the CHINS proceedings, while Mother completed a substance abuse assessment and submitted to drug screens, Mother: did not submit to *all* requested drug screens; admitted to having used spice in July and September 2016; spent one week in jail in September 2016 for spice use; missed three therapy appointments and was discharged from therapy for noncompliance in September 2016; left an inpatient treatment center against staff advice after only ten days of a twenty-

one day program; and failed to repeat an outpatient treatment program, which had been recommended. In addition, while Mother enjoyed semi-supervised visits with Child for a period of time, Mother's visits with Child were fully supervised beginning in May 2016. During the summer of 2016, Mother ceased visits with Child for a period of approximately one month, which led to her discharge from "at least three (3) service providers." Appellant's App. Vol. 2 at 29.

[11] Mother's arguments on appeal simply seek to have this court disregard the evidence most favorable to the trial court's judgment and instead reweigh the evidence in her favor, which we cannot do. The evidence supports the trial court's finding that Mother has "yet to demonstrate the ability or willingness to make lasting changes from past behaviors." *Id.* We cannot say that the trial court clearly erred when it concluded that the conditions that resulted in Child's removal will not be remedied.

### *Best Interests*

[12] In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dep't. of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Off. of Fam. & Child.*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an

important consideration in determining the best interests of a child." *In re A.K.*, 924 N.E.2d at 224.

[13] Again, Mother does not challenge the trial court's findings in support of this conclusion. Still, Mother contends that termination is not in Child's best interests because "Mother improved her parenting skills, completed her drug treatment, passed her drug screens, was actively involved in the CHINS case, and had a bond with the Child." Appellant's Br. at 17. Mother also asserts that she was "clean and sober at the time of the evidentiary hearing on March 14, 2017[,]" and she had a "stable and safe home that was suitable for the Child." *Id.* Mother also asserts that, in light of Father's relapse in March 2017, she would leave Father, to whom she is married, if that were required to maintain her parental rights over Child. Mother's contentions on this issue amount to nothing more than a request that we reweigh the evidence, which, again, we cannot do.

[14] DCS presented evidence that, while Mother showed progress early in the CHINS proceedings, she missed several visits with Child during the summer of 2016, relapsed and used spice in July and September 2016, was arrested and spent one week in jail in September 2016, was discharged from three service providers, and left an inpatient treatment program against staff advice more than one week early. Child needs consistent and reliable care, and he needs permanency. As Samantha Goltz, the DCS family case worker, testified, it is in Child's "best interest to be in a stable home free from drug and alcohol abuse and to be adopted and have permanency." Tr. at 127. The totality of the

evidence, including Mother's historical inability to provide a safe and stable home and her failure to comply with services, supports the trial court's conclusion that termination of Mother's parental rights is in Child's best interest.

Affirmed.

Mathias, J., and Barnes, J., concur.